UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HELIX INVESTMENT MANAGEMENT, LP,

       Plaintiff,

v.                        Case No.: 8:18-cv-206-T-33AEP

PRIVILEGE DIRECT CORP., ET AL.,

       Defendants.
_____/

## **ORDER**

This matter comes before the Court pursuant to the Motion to Dismiss Plaintiff's Third Amended Complaint or, in the Alternative, to Stay the Litigation, filed jointly by Defendants Oliphant Financial Group, LLC, Oliphant Financial Corporation, and Robert A. Morris on December 21, 2018. (Doc. # 100). Plaintiff, Helix Investment Management, LP (Helix) filed a Response in opposition thereto on January 4, 2019. (Doc. # 104). For the reasons that follow, the Motion is denied.

## I. **Background**

Helix brings this action for breach of contract, breach of promissory notes, and breach of guarantee arising out of a set of business transactions related to the purchase and

1

collection of a series of debt portfolios. (Doc. # 95 at
¶ 1).

## A. **Factual Discussion**[1]

During 2016, Privilege Direct began contemplating a
business venture with Oliphant Financial Group, LLC and
Oliphant Financial Corporation (collectively, the Oliphants).
(Doc. # 95 at ¶ 14). Pursuant to this plan, Privilege Direct
would advance funds to the Oliphants to purchase various debt
portfolios. (Id.). When this business venture was
contemplated, Helix was a secured creditor of Privilege
Direct. (Id. at ¶ 16). And, at least some portion of the
funds that Privilege Direct agreed to advance was sourced
either from loans made by Helix, or loan proceeds that were
due to, or held in trust for, Helix. (Id. at ¶ 17). Hence,
Helix's consent was required to fund this contemplated
business venture. (Id. at ¶ 18). To provide this consent,
Helix entered the Oliphant Security Agreement, as the Lender,
with Privilege Direct, the Oliphants, Privilege Wealth PLC,
and Privilege Wealth One, on November 30, 2016. (Doc. # 95-
1). The Oliphant Security Agreement provides Helix's consent

---

[1] The following facts are taken from Helix's Third Amended
Complaint. (Doc. # 95). The facts are presented in the
light most favorable to the nonmoving party.

for Privilege Direct to advance, or procure the advance of, more than $5.1 million to the Oliphants. (Doc. # 95 at ¶ 23). The Oliphants used these funds to purchase various debt portfolios. (Id. at ¶ 23).

In paragraph two of the Oliphant Security Agreement, Privilege Direct grants Helix a security interest in various Collateral. (Doc. # 95 at ¶ 2). This Collateral includes five promissory notes (the Promissory Notes) and certain debt portfolios listed in Annexure A to the Oliphant Security Agreement. (Doc. # 95-1 at ¶ 2; Annx. A). The Promissory Notes referenced in the Oliphant Security Agreement were issued by the Oliphants to Privilege Direct as security for the money loaned for the contemplated business venture. (Doc. ## 95 at ¶ 21, 95-1 at ¶ 2). In addition, on June 29, 2016, Morris, acting in his individual capacity, executed a Guarantee to pay all monies and liabilities under Promissory Note 1 to Privilege Direct and its successors, legal representatives, and assigns. (Doc. # 95-9).

The Oliphant Security Agreement also grants Helix certain rights in the event of a default. (Doc. # 95-1 at ¶ 13). These include the right to collect all Collateral in the name of the Oliphants or Privilege Direct and the right

to take control and possession of any Collateral proceeds. (Id.).

On March 2, 2017, the Oliphants executed a binding Term Sheet setting forth the terms for Helix to advance funds to Oliphant in order to purchase additional debt portfolios. (Doc. # 95-2). Helix alleges that, pursuant to the Term Sheet, money was to be collected on the past due accounts in these portfolios and Oliphant Financial Group, LLC and Helix were to share the collection proceeds. (Doc. # 95 at ¶¶ 25-27). Helix advanced Oliphant Financial Group, LLC approximately $273,825.00 and $163,073.95 to fund the purchase of two additional debt portfolios pursuant to the Term Sheet. (Id. at ¶¶ 28-29).

## B. **Procedural Posture**

Helix filed this action against Privilege Direct and the Oliphants on January 23, 2018. (Doc. # 1). The Oliphants and Morris moved to dismiss Helix's original complaint as a shotgun pleading. (Doc. # 32, 37). With leave of the Court, Helix filed an Amended Complaint on May 17, 2018. (Doc. # 46). Thereafter, Helix sought leave to file a Second Amended Complaint correcting various pleading errors, which the Court granted. (Doc. ## 49, 50). The Oliphants then moved to

dismiss Helix's Second Amended Complaint arguing, among other things, that Helix failed to join Privilege Wealth PLC as an indispensable party. (Doc. # 54). The Court held oral argument on the motion to dismiss and directed the parties to provide further briefing regarding this issue. (Doc. # 71). In its supplemental brief, Helix requested the opportunity to amend the Second Amended Complaint to clarify Privilege Wealth PLC's limited role, which the Court granted. (Doc. ## 56, 88). The Third Amended Complaint, the operative Complaint, was filed on December 10, 2018. (Doc. # 95).

The Third Amended Complaint bases this Court's exercise of jurisdiction on diversity of citizenship, arguing the parties are completely diverse and the amount in controversy exceeds $75,000. (Id. at ¶¶ 6-13). Helix is incorporated, and has its principal place of business, in Luxembourg. (Id. at ¶ 8). During this litigation, Helix also registered to do business in Florida. (Doc. # 24). The Third Amended Complaint provides that Privilege Direct is a Florida corporation with its principal place of business in the United Kingdom. (Doc. # 95 at ¶ 9). Oliphant Financial Group, LLC is a Delaware limited liability company that is registered to do business in Florida. (Id. at ¶ 10). Its sole member is

Anglo Scottish American Holdings Corporation, a for-profit corporation incorporated in and with its principal place of business in Florida. (Doc. # 112). Oliphant Financial Corporation is a Florida corporation with its principal place of business in Florida. (Doc. # 95 at ¶ 11). Robert Morris is an individual who is a citizen of Florida. (Id. at ¶ 12; Doc. # 111 at ¶ 4). He serves as president of the Oliphants. (Doc. # 95 at ¶ 12).

Helix asserts the following claims against the Oliphants: breach of the Oliphant Security Agreement, unjust enrichment, breach of Promissory Notes 01-04, and breach of the Term Sheet. (Id. at ¶¶ 30-165). In addition, Helix sues Morris for the breaching the Guarantee and sues Privilege Direct for breaching the Oliphant Security Agreement. (Id. at ¶¶ 166-194). Finally, Helix requests declaratory relief regarding the Oliphant Security Agreement. (Id. at ¶¶ 195-199).

On December 21, 2018, the Oliphants filed this Motion to Dismiss Helix's Third Amended Complaint or, in the Alternative, to Stay the Litigation. (Doc. # 100). Helix responded in opposition on January 4, 2019. (Doc. # 104). The Motion is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff.  Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).  Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990).  The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Additionally, motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually.  Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Where the jurisdictional attack is based on the face of the pleadings, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion.  Lawrence v. Dunbar, 919

F.2d 1525, 1529 (11th Cir. 1990). Alternatively, where, as here, the defendants assert a factual attack, a trial court can "weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

III. **Analysis**

The Oliphants move to dismiss Helix's Third Amended Complaint for the following reasons: (1) the Court lacks subject matter jurisdiction because there is no diversity of citizenship, (2) Helix failed to join an indispensable party (Privilege Wealth PLC), and (3) Helix lacks standing. (Doc. # 100 at 6-11). Alternatively, the Oliphants seek a stay of this action pending the resolution of Privilege Wealth PLC's ongoing bankruptcy action in the United States Bankruptcy Court for the District of New Jersey. (Id. at 11-13). Helix disputes these contentions. (Doc. # 104). The Court addresses each argument in turn.

## A. **Jurisdiction**

First, the Oliphants challenge the existence of diversity jurisdiction. The parties do not dispute that Helix is an alien corporation. (Doc. ## 100, 104). But, the Oliphants claim that Privilege Direct is also an alien corporation, which destroys diversity jurisdiction. A corporation is a citizen of both the state of its incorporation and the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1); Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010). "Thus, to sufficiently allege the citizenship of a corporation, a party must identify its states of incorporation and principal place of business." Asphalt Paving Sys., Inc. v. S. States Pavement Markings, Inc., No. 3:18-CV-255-J-34JBT, 2018 WL 3067906, at *1 (M.D. Fla. Feb. 20, 2018) (citing Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1021-22 (11th Cir. 2004)).

Similarly, a foreign corporation maintains dual citizenship as a citizen both of its state of incorporation and its principal place of business. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Previously, the Eleventh Circuit has held that diversity jurisdiction

existed between an alien plaintiff and a corporate defendant that was incorporated in Florida and had its principal place of business abroad.  Id.  However, a 2012 amendment to the diversity jurisdiction statute may modify this analysis.  The Congressional Report explains the purpose of this amendment as follows:

> The amendment would result in denial of diversity jurisdiction in two situations: (1) where a foreign corporation with its principal place of business in a state sues or is sued by a citizen of that same state and (2) where a citizen of a foreign country (alien) sues a U.S. corporation with its principal place of business abroad.

H.R. REP. NO. 112-10, at 9 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 576, 580.  Recently, the Eleventh Circuit resolved the first situation but left open the question of whether the amendment overrules Cabalceta with respect to the second situation.  Caron v. NCL (Bahamas), Ltd., No. 17-15008, 2018 WL 6539178, at *3 (11th Cir. Dec. 13, 2018) ("We are not required to decide, and do not decide, whether a corporation incorporated in a State, but with its worldwide place of business abroad, can invoke alienage-diversity jurisdiction in a suit against an alien.  This court held in Cabalceta that alienage-diversity jurisdiction was proper in

that circumstance.  Whether the 2012 amendments to § 1332 overruled <u>Cabalceta</u> is a question for another day.").

Regarding a dissolved or inactive corporation, the Eleventh Circuit has adopted the Third Circuit's rule that a corporation with no business activities is a citizen only of the state in which it was incorporated and has no principal place of business.  <u>See</u> <u>Holston Invs., Inc. B.V.I. v. LanLogistics, Corp.</u>, 677 F.3d 1068, 1071 (11th Cir. 2012) (adopting <u>Midlantic Nat. Bank v. Hansen</u>, 48 F.3d 693, 696 (3d Cir. 1995)).  In its analysis, the court emphasized that this rule rejects the idea that a court should strain to identify a principal place of business.  <u>Id.</u>  The Eleventh Circuit reasoned that this rule aligns most closely with the Supreme Court's analysis in <u>Hertz</u>, wherein it held that simple jurisdictional tests are preferable even if such application occasionally cuts against the basic rationale of diversity jurisdiction.  <u>Id.</u> (citing <u>Hertz</u>, 559 U.S. at 89-94).

The Oliphants point out that the Third Amended Complaint describes Privilege Direct as a Florida corporation with its principal place of business abroad.  (Doc. # 95 at ¶ 9).  The Oliphants proffer that records from the Florida Division of Corporations show that Privilege Direct was dissolved on

September 28, 2018, several months after Helix filed its original complaint. (Doc. # 97-1). Thus, the Oliphants assert that when this lawsuit was filed, Privilege Direct was an active Florida corporation with its principal place of business abroad. This would make Privilege Direct an alien corporation for diversity purposes pursuant to the 2012 amendments to the diversity jurisdiction statute.

Helix disputes this allegation, arguing that Privilege Direct is a Florida citizen for jurisdiction purposes because it was inactive at the time the suit was originally filed. (Doc. # 104). According to Helix, Privilege Direct has not conducted business activities since late 2017. Helix claims that the original complaint was drafted in late December 2017, and was mistakenly not updated prior to filing. Helix received a letter from Privilege Direct's parent prior to filing this suit, which informed its creditors that it was seeking voluntary liquidation. (Doc. # 104-2). Ultimately, Privilege Wealth PLC entered bankruptcy administration on January 23, 2018, the same date this action was filed. (Doc. # 104 at 5-6). Helix also provides evidence that mail sent via FedEx to Privilege Direct's address in the United Kingdom was returned as undeliverable on January 19, 2018, prior to

Helix filing its initial complaint. (Doc. # 104-1). Thus, Helix contends that despite Privilege Direct's status with the Florida Division of Corporations, it was not conducting business activities at the time the suit was filed. (Doc. # 104 at 4-6) (citing Centcorp. Invests., Ltd. v. Folgueira, No. 13-23019-CIV-MOORE-MCALILEY, 2014 WL 12584298, *2 (S.D. Fla. Sep. 4, 2014)) (holding that corporation conducting no business activities has no principal place of business and its citizenship is controlled by its place of incorporation).

The corporate records presented by the Oliphants reveal that Privilege Direct filed its last statutorily required annual corporate report in 2017. (Doc. # 97-1 at 2). Florida law provides that if an entity does not file an annual report by the third Friday of September, the business entity will be administratively dissolved or revoked in the state's records at the close of business on the fourth Friday of September. See Chapters 607, 617 and 620, Fla. Stat. Accordingly, the evidence proffered by the Oliphants likely indicates that the Privilege Direct was administratively dissolved in September of 2018 for failing to file a 2018 corporate report. This supports Helix's position that Privilege Direct did not

conduct any business activities, or has been inactive, since December of 2017.

The Oliphants also argue that Helix's evidence is insufficient to demonstrate inactivity, falling far short of the sworn declaration that established inactivity in Centcorp. (Doc. # 107 at 2-3). Helix acknowledges the signed affidavit in Centcorp but disputes that such evidence is required. As Helix notes, Centcorp was in a different procedural posture because jurisdictional challenges were raised earlier in the litigation. Centcorp, 2014 WL 12584298, at *2. Helix claims that the delay here, where the Oliphants challenged jurisdiction after the close of discovery, has hindered Helix's ability to obtain evidence establishing Privilege Direct's inactivity. (Doc. # 108 at 3-5).

The Court agrees with Helix. The record supports that Privilege Direct was inactive when Helix originally filed this lawsuit. This includes the evidence submitted by the Oliphants to challenge the status of Privilege Direct. Further, reasoning by both the Eleventh Circuit and the Supreme Court in favor of simple jurisdictional tests supports this result. See Hertz, 559 U.S. at 89-94; Holston, 677 F.3d at 1071.

Therefore, Privilege Direct is a Florida corporation for jurisdictional purposes and diversity jurisdiction exists.

**B. <u>Indispensable Party</u>**

Next, the Oliphants argue the operative Complaint should be dismissed based on Helix's failure to join Privilege Wealth PLC, an indispensable party. The Eleventh Circuit employs a two-step approach when analyzing a motion to dismiss for failing to join a required party pursuant to Rule 19.

> First, the court must ascertain under the standards of Rule 19(a) whether the [party] in question is one who should be joined if feasible. If the person should be joined but cannot (because for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.

<u>Focus on Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1279-80 (11th Cir. 2003) (quoting <u>Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.</u>, 669 F.2d 667, 669-71 (11th Cir. 1982)). Rule 19(a) states in relevant part:

> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if
> (1) in his absence, complete relief cannot be accorded among those already parties, or
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the act in his absence may

> (i) as a practical matter impair or impede his
>     ability to protect that interest or
> (ii) leave any of the persons already parties
>      subject to a substantial risk of incurring
>      double, multiple, or otherwise inconsistent
>      obligations by reason of his claimed
>      interest.

Challenge, 669 F.2d at 669-70. The District Court for the
Southern District of Florida succinctly summarized the
analysis required by Rule 19(a):

> The first part of the [Rule 19(a)] test might be
> more clearly understood as involving two questions:
> whether the non-party should be joined and whether
> joinder is feasible. Where both a nonparty should
> be joined and joinder is feasible, the nonparty is
> "required" or "necessary" but not necessarily
> "indispensable." If so, then pursuant to Rule
> 19(a)(2), the Court must order that the person be
> made a party, rather than dismiss. Thus, dismissal
> for failure to join an indispensable party is only
> appropriate where the nonparty cannot be made a
> party.

Mid-Continent Cas. Co. v. Basdeo, No. 08-61473-CIV, 2009 WL
2450386 at *2-3 (S.D. Fla. Aug. 7, 2009) (internal citations
omitted). The Court must first determine whether a judgment
without Privilege Wealth PLC can provide the present parties
with complete relief. See, e.g., Molinos Valle Del Cibao, C.
por A. v. Lama, 633 F.3d 1330, 1345 (11th Cir. 2011). This
inquiry turns on whether Privilege Wealth PLC has an interest
relating to the subject of the action. See Barow v. OM Fin.

<u>Life Ins. Co.</u>, No. 8:11-cv-00159-T-33TBM, 2011 WL 2649987, at *2-3 (M.D. Fla. July 6, 2011); <u>Basdeo</u>, 2009 WL 2450386, at *3.

The Oliphants contend that complete relief cannot be granted without Privilege Wealth PLC because of its status as an obligor under the Oliphant Security Agreement and owner of the Promissory Notes. (Doc. # 100 at 6-7). Helix disputes this contention, arguing that all liability alleged in the Complaint under the Oliphant Security Agreement is completely independent of Privilege Wealth PLC and that Privilege Wealth PLC has no rights in the Promissory Notes. Helix relies on cases finding that all signatories to an agreement are not required parties and that co-obligors are not indispensable parties to a breach of contract claim. (Doc. # 104 at 11-12) (citing <u>Brackin Tie, Lumber & Chip Co., Inc. v. McLarty Farms, Inc.</u>, 704 F.2d 585, 586-87 (11th Cir. 1983); <u>Colbert v. First NBC Bank</u>, No. 13-3043, 2014 WL 1329834, at *3-4 (E.D. La. Mar. 31, 2014)). Indeed, as Helix notes, the cases cited by the Oliphants only required the joinder of absent signatories if the lawsuit impaired the ability of the signatory to protect a related interest. (Doc. # 104 at 11, n.3). These parties were not required solely because their

signatures were on the contract in dispute. (Id.). Rather, each party had specified obligations or rights under the agreements at issue that were implicated in the lawsuit. See also Ward v. Apple, Inc., 791 F.3d 1041, 1049-50 (9th Cir. 2015) (finding reversible error where the court failed to identify the interests of the absent party or address how those interests might be impaired if the action were resolved in its absence).

Thus, the relevant inquiry is whether Privilege Wealth PLC has an interest that is related to the subject of this action or that would be impaired or impeded if the case continues in its absence. The Oliphants have failed to identify an interest of Privilege Wealth PLC's that is related to this action. The Oliphant Security Agreement ties certain Collateral, including the Promissory Notes, to Privilege Wealth PLC's existing secured obligations. (Doc. # 95-1 at ¶ 2). This arrangement functions as a condition precedent to Privilege Wealth PLC funding the contemplated Oliphant venture with funds otherwise due to Helix. (Doc # 95 at ¶¶ 15-19). But, the Oliphant Security Agreement does not grant any rights to or bind Privilege Wealth PLC with any obligations outside of Paragraph eight, pursuant to which

Helix, Privilege Direct, Privilege Wealth PLC, and Privilege Wealth One all confirm and acknowledge that Helix's security interests rank in priority to those of other creditors. (Doc. # 95-1 at ¶ 8). Indeed, as Helix notes, the first whereas clause in the Oliphant Security Agreement binds Privilege Direct as an obligor, jointly and severally, to Helix as the Lender. (Doc. # 95-1 at 2). The pleadings before this Court do not implicate any rights that Privilege Wealth PLC may have under the Oliphant Security Agreement. Although the agreement references other agreements pursuant to which Privilege Wealth PLC may have rights or certain obligations, only the Oliphant Security Agreement, Promissory Notes, Term Sheet, and Guarantee are presently before the Court. Two courts in the Southern District of Florida have declined to require the joinder of an absent party with no rights or obligations under a contract even if it is a party to a separate contract with the parties at issue. See Raimbeault v. Accurate Mach. & Tool, LLC, 302 F.R.D. 675, 684-86 (S.D. Fla. 2014) (finding joinder not required because the absent party had no rights or obligations under the contract even though it may be impacted by the pending action because of a second contract to which it was a party, but that was not at

issue); Jet Pay, LLC v. RJD Stores, LLC, No. 11-60722-CIV, 2011 WL 2708650, at * 7-9 (S.D. Fla. July 12, 2011) (finding an absent party to the contract at issue was not required because the parties were not actually joint obligors, as named in the contract, but rather were each a party to a separate contract with the plaintiff involving distinct obligations). In addition, the Oliphants do not identify Privilege Wealth PLC's interest in the Promissory Notes, Guarantee, or Term Sheet.

Finally, apart from declaratory relief regarding the Oliphant Security Agreement, Helix seeks only money damages. Where only money damages are sought, a court can grant complete relief despite an absent party because "money is fungible; the recipient cares not from whence it came." United States v. Townhomes of Kings Lake HOA, Inc., No. 8:12-cv-2298-T-33TGW, 2013 WL 807152, at *4 (M.D. Fla. March 5, 2013) (quoting Molinos Valle Del Cibao, 633 F.3d at 1345). Accordingly, the Court finds that complete relief can be granted without joining Privilege Wealth PLC.

The second part of Rule 19(a) focuses on possible prejudice either to the absent party or the present litigants. Fed. R. Civ. P. 19(a)(2). Here, the Court must consider

whether any recovery in the instant case is premised on a finding that would jeopardize the missing party's interest or subject any party to multiple or inconsistent obligations. See Barow, 2011 WL 2649987 at *1-2.

The Oliphants argue they are prejudiced by Privilege Wealth PLC's absence because they will be subject to the risk of incurring multiple lawsuits involving the rights of Privilege Wealth PLC under the Oliphant Security Agreement and Promissory Notes. But, the Oliphants have not articulated what suits they may face. All claims in the instant case under the Oliphant Security Agreement relate only to specific duties of the Oliphants or Privilege Direct. (Doc. # 95 at ¶¶ 30-44, 180-194). Privilege Wealth PLC is not a party to the Promissory Notes, the Term Sheet, or the Guarantee. (Doc. ## 95-2, 95-5, 95-6, 95-7, 95-8, 95-9). Moreover, Privilege Wealth PLC's pending bankruptcy petition does not reference the portfolios sought by Helix. (Doc. # 79-1). Thus, it is not apparent what suits the Oliphants may face. And, as Helix notes, the theoretical possibility of another lawsuit cannot be the basis for dismissal under Rule 19(a)(2). See Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1046 (9th Cir. 1983).

Furthermore, Helix argues that the administrator of the bankruptcy estate has not identified an interest in the instant litigation, as required by the second part of a Rule 19(a) analysis. According to Helix, the administrator is aware of the ongoing litigation and has been in communication with Helix. Again, the pending bankruptcy petition does not reference the portfolios sought by Helix. (Doc. # 79-1). Helix urges the Court not to dismiss the entire complaint in favor of an interest that the bankruptcy trustee is aware of and has not asserted. In support, Helix cites cases illustrating the general reluctance of courts to join a non-party for purposes of protecting a non-party's interest when the non-party itself has not claimed an interest in the outcome. See HDR Eng'g, Inc. v. R.C.T. Eng'g., Inc., No. 08-81040-CIV, 2010 WL 2402908, at *2-4 (S.D. Fla. June 15, 2010) (citing School Dist. Of City of Pontiac v. Sec. of U.S. Dept. of Educ., 584, F.3d 253, 266 (6th Cir. 2009); United States v. San Juan Bay Marina, 239 F.3d 400, 406-07 (1st Cir. 2001); United States v. Bowen, 172, F.3d 682, 689 (9th Cir. 1999)). These cases reinforce the policy that the plaintiff is the master of its own claim.

In summary, the pleadings before the Court do not demonstrate that Privilege Wealth PLC has any interest in the contracts at issue that poses a risk of inconsistent obligations for itself, the Oliphants, Morris, or Helix. Thus, the Oliphants have not demonstrated that Privilege Wealth PLC should be joined or that the failure to join Privilege Wealth PLC prejudices any remaining parties.

The Court does not reach the 19(b) analysis because it finds that Privilege Wealth PLC is not required to be joined under 19(a).

## C. Standing to Sue

Next, the Oliphants argue that Helix lacks standing to enforce the Promissory Notes or the Term Sheet. (Doc. # 100 at 8-11). Under Florida law, a promissory note may be enforced by a holder or a nonholder with certain rights. Fla. Stat. § 673.3011. According to the Oliphants, Helix is not the original payee on any of the Promissory Notes and has not presented any evidence that the Promissory Notes were transferred or endorsed to Helix. The Oliphants claim that the UCC filings are associated with a different entity than Helix and do not support Helix's claims. (Doc. # 100 at 10). Thus, Helix has not shown its status as a holder or a non-

holder with the rights of a holder of the Promissory Notes. On the other hand, Helix maintains that Privilege Direct granted and assigned its interest in the Promissory Notes to Helix in the Oliphant Security Agreement. (Doc. # 95-1 at ¶ 13). Helix insists that the entities are the same and that any inconsistency in the LP or SLP designation results from the Florida registration it filed during this litigation. (Doc. # 104 at 15). Finally, Helix claims that the Third Amended Complaint alleges sufficient facts to establish a default under the Oliphant Security Agreement, which triggers Helix's right to enforce the Promissory Notes.

The Court resolves this issue in favor of Helix. The Complaint alleges default by the Oliphants. (Doc. # 95 at ¶¶ 30-44). And, Helix Investment Management SLP and Helix are the same entity. During this litigation, Helix filed a new registration in order to conduct business in Florida. (Doc. # 24-1). Indeed, Helix registered in Florida at the Oliphants' request. (Doc. # 20). In order to register, Helix was required to select an identifying business designation. The Luxembourg "SLP" designation is not an accepted designation in Florida. See § 620.1108, Fla. Stat. Accordingly, Helix registered itself in Florida as an LP and

then requested, and was permitted, to amend the pleadings to proceed under the LP designation. (Doc. # 104 at 14-15).

The Oliphants also dispute that Helix has standing to bring suit under the Promissory Notes because the Term Sheet is not a final contract. The Oliphants argue that the Term Sheet is like a loan commitment and therefore does not demonstrate that Helix has any rights under the Promissory Notes. (Doc. # 100 at 9). This argument is unpersuasive. In the case relied on by the Oliphants, the Southern District of Florida dismissed a plaintiff's claims because essential loan terms were missing. See Univ. Creek Assoc., II, Ltd. v. Boston Am. Fin. Grp., Inc., 100 F. Supp. 2d 1337, 1340 (S.D. Fla. 1998). Notably, the plaintiff in University Creek asserted a breach of contract claim based on a commitment letter that failed to specify the amount of interest, terms of repayment, or funding. Id. at 1340. Also, the letter contained no mutual assent between the parties. Id. Accordingly, the University Creek plaintiff had no standing to bring a breach of contract claim based on the proposed loan agreement. The Term Sheet is distinguishable from the commitment letter at issue in University Creek. See (Doc. #

95-2).    Thus, the Court finds that Helix has standing to bring this action.

**D. <u>Bankruptcy Stay</u>**

Finally, the Oliphants ask the Court to stay this action pending the resolution of Privilege Wealth PLC's ongoing bankruptcy proceeding in the United States Bankruptcy Court for the District of New Jersey.    (Doc. # 100 at 11-13). According to the Oliphants, the scope of protection in a bankruptcy stay applies to the interests of the debtor and is not constrained merely by the named parties.    The Oliphants argue that the Promissory Notes and Oliphant Security Agreement are included within the definition of property of the debtor's estate and accordingly the automatic stay applies to Privilege Wealth PLC's rights under those documents.    Thus, the Oliphants contend that because Helix seeks to recover an obligation that is enforceable against Privilege Wealth PLC, the bankruptcy case should resolve the action.

Helix responds that a stay is not appropriate because the estate's trustee has not asserted an interest in the action, despite ample mechanisms to do so.    Helix argues that a stay absent a request from the trustee is unnecessary and

would substantially prejudice Helix. According to Helix, Privilege Direct, and not Privilege Wealth PLC, granted Helix its rights in the Collateral at issue here. In addition, Privilege Wealth PLC has acknowledged that Helix's security interests rank in priority to the other claims as the most senior and secured obligation. (Doc. # 95-1 at ¶ 8). Further, Helix alleges that its representatives are engaged in ongoing communication with the bankruptcy trustee who has declined to participate in this action. Helix also notes that the bankruptcy proceeding was filed on February 8, 2018, after the instant action was filed on January 24, 2018.

The Oliphants have not identified an interest of Privilege Wealth PLC that is at issue in this lawsuit and therefore a stay is inappropriate.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

The Motion to Dismiss Helix's Third Amended Complaint or, in the Alternative, to Stay the Litigation (Doc. # 100) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 5th day of March, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE